# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BOBBY L. LINDSAY,**<br>**County of Residence: Anne Arundel** | § § § | |
| **Plaintiff,** | § § | **COMPLAINT** |
| **v.** | § § § | **JURY TRIAL DEMANDED** |
| **BRIDGES CONSULTING, INC.,**<br>**County of Residence: Anne Arundel** | § § § | |
| **Defendant.** | § § | |

Plaintiff Bobby L. Lindsay ("Lindsay"), by the undersigned attorneys, alleges:

1.      This civil action is brought under the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301, *et seq*. ("USERRA").

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this civil action under 28 U.S.C. § 1331 and 38 U.S.C. § 4323(b).

3.      Venue is proper in this judicial district under 38 U.S.C. § 4323(c)(2) because Defendant Bridges Consulting, Inc. ("Bridges"), maintains a place of business in this judicial district.  Additionally, venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## PARTIES

4.      Lindsay resides in Severna Park, Maryland, which is within the jurisdiction of this Court.

1

5.      Bridges is a private, for-profit company located in Annapolis Junction, Maryland, which is within the jurisdiction of this Court.  Bridges is an "employer" within the meaning of 38 U.S.C. § 4303(4)(A), and is subject to suit under 38 U.S.C. § 4323(a).

## FACTUAL ALLEGATIONS

6.      Lindsay is a Lieutenant Commander in the U.S. Coast Guard Reserve.  He enlisted in the U.S. Marines in 1984, served for four years on active duty, eight years in the Marine Corps Reserves, and six years in the U.S. Navy Reserve.  Lindsay was commissioned as a Reserve Officer in the Coast Guard in July 2002.

7.      Bridges is a government contractor that provides support in the intelligence, defense, and federal sectors.  Bridges acts as both a prime contractor, working directly with a government agency, and as a subcontractor, contracting with other companies that work directly with government agencies.

8.      Lindsay was hired by Bridges on February 15, 2012, as a Principal Member of the Acquisitions Staff.

9.      On April 12, 2012, Lindsay signed an employment agreement with Bridges.  The contract established an at-will employment relationship, with the express expectation that two weeks notice would be provided for a termination not based on cause.

10.     In the summer of 2012, Lindsay was promoted to Senior Manager and assigned to work on the "BiFrost Contract."  As a Senior Manager, Lindsay supervised the BiFrost Contract team, as well as Bridges' employees working on other contracts.  In addition to his direct contract work, Lindsay was responsible for recruiting at events, invoicing sub-contracts, approving timesheets, and undertaking business development efforts to gain new business.

11.     In April 2014, Lindsay applied to the Coast Guard for an active duty operational support ("ADOS-AC") position to do finance work for the Audit Remediation Division at Coast Guard headquarters.

12.     In late May 2014, the BiFrost Contract ended.

13.     On June 1, 2014, Lindsay's Supervisor, Director Wayne McNemar, emailed a resource plan to Lindsay and Ed Dreikorn, another Senior Manager on the BiFrost Contract.  A resource plan laid out the employee's schedule after the end of a contract.  The resource plan McNemar sent indicated Lindsay and Dreikorn would have one week off with pay (June 2-6) and two weeks of paid "bench time" (June 9-13, 16-20).

14.     In the email, McNemar informed Lindsay and Dreikorn that bench time was to be used to place them on a new contract, and that McNemar was optimistic about being able to do so soon.

15.     Lindsay completed his annual active duty training from June 8 to 13, which required him to use military leave during his bench time.

16.     Soon after Lindsay returned from his active duty training, the Coast Guard notified him that he had been selected for the ADOS-AC position that he had applied for in April.

17.     On June 17, 2014, Lindsay received his ADOS-AC orders, which indicated his military service would commence on June 18, 2014 and continue through September 30, 2014.

18.     That same day, Lindsay gave Bridges a copy of his orders, and notice that he would be deploying to active duty and that he would return to work after September 30, 2014.  In addition, he stated, because his active duty assignment was in Washington, DC, he should be

3

able to continue some of his Senior Manager duties while deployed.  He also informed Bridges that he was claiming the company's Military Leave Benefit.

19.    Also on June 17, 2014, Lindsay discussed his deployment with McNemar and then with Human Resources Director Marjorie Weekes.  After being told that Lindsay would deploy the next day, Weekes became upset and agitated and declared, "He can't do that."

20.    At the time of his June 18, 2014, deployment, Lindsay's salary at Bridges was approximately $153,000.

21.    For some period while deployed, Lindsay continued to perform work for Bridges, including approving the timesheets of employees he supervised.

22.    While Lindsay was deployed, Bridges also scheduled an interview for him for a position on the ESEA Contract.

23.    While deployed, Lindsay met with McNemar and Bridges' Chief Executive Officer, Chuck Faughnan III, on July 8, 2014, to discuss Lindsay's pay while on military duty and potential ESEA Contract positions.

24.    On July 10, 2014, Lindsay received an email from Principal Financial Group ("Principal"), the company managing his 401k account, which referenced a "change of employment status."   Lindsay contacted Principal, and was informed that Bridges had told Principal that Lindsay was no longer an employee, and as a result, he would lose a portion of the funds in his account.  Prior to Principal's email, Lindsay did not think there was a problem with his employment status at Bridges.

25.    Lindsay immediately forwarded the email regarding his 401k to Faughnan III and McNemar, noting there was a problem and that he was on military leave.  Lindsay received no reply.

26.     In August 2014, Lindsay filed a complaint related to the action taken on his 401k account with the Veterans Benefits Administration, as well as a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging an employment violation.  Bridges was notified of Lindsay's complaints at that time.

27.     On September 2, 2014, Lindsay sent a letter to Bridges that he planned to return to work on October 6, after his deployment ended.  Lindsay again received no reply.

28.     On September 23, 2014, Lindsay sent Bridges an email reiterating his plan to return to work on October 6.  That day, a security representative from Bridges replied by email, stating that Lindsay was no longer an employee at Bridges, that there was no position for him, and that his position was terminated with the loss of contract on May 31, 2014.  The email ended by informing Lindsay that if he came to Bridges, the company would call security.

29.     Bridges never went through a formal termination process with Lindsay.  He still has his employee badge, money in his health savings account, and unused vacation hours.

30.     Upon information and belief, Lindsay was the only full-time employee on the BiFrost Contract who was not retained by Bridges after that contract ended.

31.     On September 24, 2014, Lindsay applied for a Program Manager position at Bridges, which the company had posted on September 17.  The position was on a contract for which Bridges was the prime contractor.  Upon information and belief, Lindsay met the position qualifications.

32.     On November 3, 2014, Lindsay received an email from Ceil Paul, a recruiter at Bridges, informing him that he was not selected for the position.

33.     Lindsay continued to apply for positions at Bridges in the following months, but was never hired.

34.     Bridges was aware of its obligations under USERRA.  Senior Bridges' officials discussed whether USERRA protections applied to Lindsay.  Nevertheless, Bridges terminated Lindsay after he deployed for military service and was on active duty, and thereafter refused to employ him.

35.     Bridges' actions show a reckless disregard for whether its conduct was prohibited by the provisions of USERRA.

36.     Because Bridges did not reemploy him, Lindsay extended his military orders three times.  Lindsay extended his initial deployment from October 2014 until December 2014, and informed Bridges that he hoped to return to work in January 2015 – Bridges again replied that he was no longer an employee.  Lindsay returned to military service from January 2015 to July 2015, and again from August 2015 to January 2016.

37.     Until January 2017, Lindsay earned less money than he had at Bridges.

38.     On March 23, 2016, Lindsay filed a complaint with the U.S. Department of Labor, Veterans Employment and Training Service ("VETS"), alleging that Bridges had violated USERRA by terminating his employment on the basis of his military service.  Lindsay also alleged facts to support a claim that Bridges had violated USERRA by failing to reemploy him following his military duty and by retaliating against him.

39.     Bridges represented to VETS that Lindsay's termination was effective June 20, 2014, the last day of Lindsay's bench time.

40.     At all relevant times, Lindsay had performed less than five years of military service during his employment with Bridges.

## CLAIMS FOR RELIEF

41.     Lindsay repeats the factual allegations set forth in paragraphs 6-40.

6

42. Lindsay meets the requirements for coverage under USERRA. *See* 38 U.S.C. §§ 4303 & 4304.

### Claim 1: Failure to Reemploy in Violation of USERRA

43. USERRA provides that "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter" if that person satisfies USERRA's notice, service length, and application requirements. 38 U.S.C. § 4312(a).

44. USERRA requires employers to promptly reemploy any person returning from a period of military service, which was for more than 90 days, "in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, or a position of like seniority, status and pay, the duties of which the person is qualified to perform." 38 U.S.C. § 4313(a)(2).

45. Bridges violated USERRA Sections 4312 and 4313 by failing to promptly and properly reemploy Lindsay when he returned from active duty.

46. Lindsay satisfied the notice, service length, and application requirements in USERRA Section 4312 by timely providing Bridges with notice of his leave, serving for less than five years, and requesting reemployment on multiple occasions.

47. Bridges cannot establish any of the exceptions to reemployment laid out in 38 U.S.C. § 4312(d)(1).

48. Bridges' violation of USERRA Sections 4312 and 4313 was willful under 38 U.S.C. § 4323(d)(1)(C) in that Bridges showed a reckless disregard for whether its conduct was prohibited by the provisions of USERRA.

49.     Lindsay has suffered a substantial loss of earnings and other benefits in an amount to be proven at trial as a result of Bridges' violations of USERRA.

### Claim 2: Termination in Violation of USERRA

50.     USERRA provides that "[a] person who is a member of . . . a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation."  38 U.S.C. § 4311(a).

51.     Bridges violated USERRA Section 4311 by terminating Lindsay on the basis of his membership in the Coast Guard, his absence to perform military service, and/or his military service obligations.

52.     Lindsay's military service was a motivating factor in Bridges' decision to terminate Lindsay's employment.

53.     Bridges' violation of USERRA Section 4311 was willful under 38 U.S.C. § 4323(d)(1)(C) in that Bridges showed a reckless disregard for whether its conduct was prohibited by the provisions of USERRA.

54.     Lindsay has suffered a substantial loss of earnings and other benefits in an amount to be proven at trial as a result of Bridges' violations of USERRA.

### Claim 3: Retaliation in Violation of USERRA

55.     USERRA provides that "[a]n employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter . . . or (4) has exercised a right provided for in this chapter."  38 U.S.C. § 4311(b).

56.    USERRA protects employee rights and benefits.  *See* 38 U.S.C. §§ 4303, 4316, 4318.

57.    Lindsay took action to protect his employment rights under USERRA when he filed complaints against Bridges in August 2014.

58.    Bridges was notified of Lindsay's complaints, and afterwards refused to employ him in positions for which he was qualified.

59.    Bridges violated USERRA Section 4311(b) when it discriminated in employment and/or took adverse employment actions against Lindsay because he had taken action to enforce his USERRA-protected rights.

60.    Lindsay's actions to enforce his USERRA-protected rights were a motivating factor in Bridges' decision to not employ Lindsay.

61.    Bridges' violation of USERRA Section 4311 was willful under 38 U.S.C. § 4323(d)(1)(C) in that Bridges showed a reckless disregard for whether its conduct was prohibited by the provisions of USERRA.

62.    Lindsay has suffered a substantial loss of earnings and other benefits in an amount to be proven at trial as a result of Bridges' violations of USERRA.

## **PRAYER FOR RELIEF**

WHEREFORE, Lindsay prays that the Court enter judgment against Bridges and, further, grant him the following relief:

A.    Declare that Bridges' failure or refusal to promptly reemploy Lindsay in an appropriate reemployment position was unlawful and in violation of USERRA;

B.    Declare that Bridges' termination of Lindsay's employment was unlawful and in violation of USERRA;

C. Declare that Bridges' retaliation against Lindsay was unlawful and in violation of USERRA;

D. Order Bridges to comply fully with the provisions of USERRA by paying Lindsay for his lost wages and other benefits suffered by reason of Bridges' violations of USERRA;

E. Declare that Bridges' violations of USERRA were willful;

F. Award Lindsay liquidated damages in an amount equal to the amount of his lost wages and other benefits suffered by reason of Bridges' willful violations of USERRA, as authorized under 38 U.S.C. § 4323(d)(1)(C);

G. Award prejudgment interest on the amount of lost wages and benefits due;

H. Enjoin Bridges from taking any action with respect to Lindsay that fails to comply with USERRA; and

I. Grant such other and further relief as may be just and proper together with the costs and disbursements of this lawsuit.

## JURY DEMAND

Lindsay hereby demands a jury trial under Federal Rule of Civil Procedure 38.

Date:   December 12, 2017

Respectfully submitted,

JOHN M. GORE
Acting Assistant Attorney General
Civil Rights Division

DELORA L. KENNEBREW (GA Bar No. 414320)
Chief
Employment Litigation Section
Civil Rights Division

*/s/ Kali Schellenberg*
*/s/ Alisa Philo*
(signed by Alisa Philo with permission of Kali Schellenberg)

10

JOHN BUCHKO (DC 452745)
Deputy Chief
KALI SCHELLENBERG (PA 321435; MA 694875)
ALISA PHILO (CA 295892)
Trial Attorneys
Civil Rights Division
Employment Litigation Section, PHB 4926
950 Pennsylvania Avenue, NW
Washington, DC  20530
Telephone:  (202) 305-3194
Kali.Schellenberg@usdoj.gov

11